**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM J. BRENNAN, | Civ. No. 96-4061(DRD) |
| Plaintiff, | |
| v. | **O P I N I O N** |
| WILLIAM NORTON, individually and as Chief of the Teaneck Fire Department, JOHN BAUER, individually and as Deputy Chief of the Teaneck Fire Department, JOSEPH PALAZZOLA individually and as Deputy Chief of the Teaneck Fire Department, ROBERT O'NEILL, individually and as Captain of the Teaneck Fire Department, GARY SAAGE, individually and as Town Manager of the Township of Teaneck and Township of Teaneck, a Municipal Corporation, | |
| Defendants. | |

Jonathan I. Nirenberg, Esq.
DEUTSCH RESNICK, P.A.
Attorneys for Plaintiff
One University Plaza, Suite 305
Hackensack, New Jersey 07601

Robert L. Herbst, Esq.
BELDOCK LEVINE & HOFFMAN LLP
Attorneys for Plaintiff
99 Park Avenue
New York, New York 10016
  Attorneys for Plaintiff

GENOVA, BURNS & VERNOIA
of Counsel:
Thomas M. Toman, Jr., Esq.

On the Brief:
Dina M. Mastellone, Esq.
Keith A. Reinfeld, Esq.

Attorneys for Defendants
Eisenhower Plaza II
354 Eisenhower Parkway
Livingston, New Jersey 07039-1023

**Debevoise, Senior District Judge**

Plaintiff in this extensively litigated case has applied for attorneys' fees and expenses pursuant to 42 U.S.C. §1988.

## Background

Plaintiff filed his complaint in this action in 1996 alleging violations of his First Amendment right to free speech as well as pendent state law claims against the Township of Teaneck; its Manager, Gary Saage; Fire Chief, William Norton; Deputy Fire Chief, Joseph Palazzola; and Fire Captain, Robert O'Neill.

Plaintiff charged, among other things, that defendants engaged in a campaign of harassment and retaliation against him in violation of his First Amendment right of expression after he spoke out in opposition to the closing of two fire stations and in opposition to the hiring of a civilian as the Township's Fire Sub-Code Official. The parties filed cross-motions for summary judgment, and the court granted plaintiff summary judgment on defendants' counterclaim and granted summary judgment to the defendants on all of plaintiff's state law claims. These claims included a charge of retaliation under New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. §34:19-2.

After the court's disposition of the summary judgment motions disagreement arose

between plaintiff and his counsel, and counsel moved successfully for leave to withdraw from the case. With plaintiff representing himself the case proceeded to trial on plaintiff's §1983 claim for retaliation for the exercise of protected expression. The jury returned a verdict for plaintiff awarding damages as follows: i) $382,500 in compensatory damages against all defendants; ii) $150,000 in punitive damages against Saage; iii) $90,000 in punitive damages against Norton; iv) $90,000 in punitive damages against Bauer; v) $80,000 in punitive damages against Palazzola; and vi) $80,000 in punitive damages against O'Neill.

Thereafter the court granted defendants' motions for judgment as a matter of law with respect to defendants Norton, Bauer, Palazzola and O'Neill and also Saage's motion for judgment as a matter of law with respect to punitive damages. It denied motions for judgment as a matter of law with respect to compensatory damages against the Township and Saage and it denied a defense motion for remittitur. Thus plaintiff ended up with a judgment against Saage and the Township for $382,500.

Both sides appealed. On appeal the Court of Appeals affirmed this court's grant of judgment as a matter of law to all of the individual defendants except Saage; it affirmed the denial of judgment as a matter of law as to liability with respect to Saage but affirmed the judgment as a matter of law in his favor as to punitive damages; it reversed the denial of the Township's motion for judgment as a matter of law and this court's dismissal of plaintiff's CEPA claim; it affirmed this court's denial of the Township's and Saage's motions for a new trial but reversed the denial of the remittitur motion. Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003).

The case returned to this court for consideration of Saage's remittitur motion and

3

disposition of plaintiff's CEPA claim. The court awarded plaintiff a total of $197,859 (plus interest from the date of the verdict in 2000) in compensatory damages. It granted defendants' motion for summary judgment on plaintiff's CEPA claim and denied plaintiff's motion for summary judgment against Saage on plaintiff's CEPA claim.

Plaintiff now seeks attorneys' fees. Three law firms have represented plaintiff during the course of the litigation. Initially the New York City law firm of Herbst & Greenwald LLP of which Robert Herbst was a partner ("H&G"), was principal counsel. During the period when plaintiff represented himself Mr. Herbst became a partner at Beldock Levine & Hoffman LLP ("BLH"). After the Court of Appeals remanded the case to this court plaintiff retained BLH as his counsel. In January 1998 Deutsch Resnick, P.A. became involved in the case as local counsel and remained in that capacity until plaintiff commenced representing himself. That firm resumed its role as local counsel upon remand of the case.

H&G's work was undertaken primarily by Mr. Herbst, assisted by associates Carol Hague, Amanda Masters and Chris Weddle. In 1996 and 1997 this work included legal and factual research, preparing the complaint, preparing initial disclosures, drafting and answering interrogatories and document requests, interviewing witnesses, discussing the case with plaintiff, retaining a handwriting expert, obtaining a report from plaintiff's treating psychiatrist, defending and conducting numerous depositions, and attending and preparing for numerous motions, conferences and settlement discussions before the magistrate judge. Deutsch and Resnick undertook or participated in many of these activities.

Prior to their being relieved, H&G prepared a lengthy pretrial order and thereafter papers in opposition to defendants' summary judgment motion. Mr. Greenwald was primarily

4

responsible for the summary judgment papers. There were further settlement discussions before the magistrate judge before H&G and Deutsch Resnick were relieved as counsel in May 1999.

Upon remand BLH engaged in extensive but fruitless efforts to settle the case. It read the lengthy trial transcript and reviewed the trial evidence and coordinated the cross-motions for summary judgment, the opposition to defendants' motion for summary judgment and the opposition to Saage's remittitur motion. Jonathan I. Nirenberg of Deutsch Resnick had primary responsibility for drafting the briefs and moving papers in opposition to Saage's motion for remittitur and for the cross-motions for summary judgment. He was engaged in the attempts to resolve the case, preparing for oral arguments, and legal research.

H&G and BLH seek attorneys' fees for the following number of hours at the following rates:

| **Merits Litigation** | | | |
|---|---|---|---|
| Attorney | Hours | Rate/hr | Total |
| Robert L. Herbst | 570.05 | $490.00 | $279,324.50 |
| Stephen R. Greenwald | 134.00 | $490.00 | $65,660.00 |
| Amanda Masters | 42.25 | $275.00 | $11,618.75 |
| Carol Hague | 216.75 | $275.00 | $59,606.25 |
| Chris Weddle | 68.00 | $275.00 | $18,700.00 |
| Spencer Freedman | 18.70 | $260.00 | $4,862.00 |
| Joani Pattarozzi | 1.80 | $90.00 | $162.00 |
| Total Fees for Merit Litigation | | | $439,933.50 |

| Attorneys' Fees Application |||| 
|---|---|---|---|
| Attorney | Hours | Rate/hr | Total |
| Robert L. Herbst | 14.6 | $490.00 | $7,154.00 |
| Elissa Lubin | 38.50 | $260.00 | $10,010.00 |
| Toni Marie Angeli | 20 | $260.00 | $5,200.00 |
| Spencer Freedman | 20.4 | $260.00 | $5,304.00 |
| Total Hours | 89.8 | | |
| Total Fees for Application | | | $27,668.00 |

| Responding to Opposition to Fee Request ||||
|---|---|---|---|
| Attorney | Hours | Rate/hr | Total |
| Robert L. Herbst | 26.70 | $490.00 | $13,083.00 |
| Spencer Freedman | 27.80 | $260.00 | $7,228.00 |
| Brandon Garrett | 3.40 | $250.00 | $850.00 |
| Elizabeth Newman | .50 | $125.00 | $62.50 |
| Total Hours | 58.40 | | |
| Total Fees | | | $21,223.50 |

Thus the total fees that H&G and BLH seek amounts to $488,825. They also seek disbursements in the amount of $24,594.04 (which includes $331.44 expended in addressing the opposition to their fee request). The grand total of H&G's and BLH's request for fees and disbursements is $513,419.04

Deutsch Resnick seeks attorneys' fees for the following number of hours at the following rates:

| Merits Litigation ||||
|---|---|---|---|
| Attorney | Hours | Rate/hr. | Total |

| Jonathan I. Nirenberg | 274.5 | $245.00 | $67,252.50 |
| Patrick J. Flor | 209.7 | $275.00 | $57,667.50 |
| Neil H. Deutsch | 20.9 | $365.00 | $7,628.50 |
| Frances Farber-Walter | 15.3 | $285.00 | $4,360.50 |
| Jamie I. Cash | 12.2 | $195.00 | $2,379.00 |
| Jeanette Tejada | 2.0 | $165.00 | $330.00 |
| Kathleen M. Ryder | 1.5 | $135.00 | $202.50 |
| Total | | | $139,820.50 |

| Responding to Opposition to Fee Request | | | |
|---|---|---|---|
| Attorney | Hours | Rate/hr. | Total |
| Jonathan I. Nirenberg | 16 | $245.00 | $3,920.00 |
| Kathleen M. Ryder | 0.6 | $135.00 | $82.00 |
| Total | | | $4,002.00 |

Thus the total fees that, Deutsch Resnick seeks amount to $143,822.50. It also seeks disbursements in the amount of $3,471.28 (which includes disbursements of $27.33 incurred in connection with addressing the opposition to its request for fees). The grand total of Deutsch Resnick's request for fees and disbursements is $147,293.78.

## Discussion

Defendants have raised two procedural grounds for denying plaintiff's application, neither of which has merit. First, defendants contend that there is insufficient documentation to support the motion. The affidavits of counsel, the time sheets showing the nature of the work and the hours spent by each attorney or legal assistant and the court's own records which reflect the particular aspect of the case to which particular hours were devoted sufficiently describe what

the attorneys did. Their initial failure to comply with Local Civil Rule 54.2(b) by describing all fee agreements and setting forth the amount billed to the client for fees and disbursements and the amount paid was remedied before the argument date.

Second, defendants urge that the application is premature and should abide the outcome of the pending appeals of the orders granting and denying motions for summary judgment and granting remittitur. Noting that attorneys' fees may be awarded only to prevailing parties, defendants argue that plaintiff is not a prevailing party because the court's remittitur award of $197,859.00 and its summary judgment on the cross-motions on plaintiff's CEPA claim are on appeal. Defendants are mistaken. A final judgment has been entered in the court; otherwise it would not be subject to appeal. Local Civil Rule 54.2(a) provides in part that "an attorney seeking compensation for services or reimbursement of necessary expenses shall file with the Court an affidavit within 30 days of the entry of judgment or order, unless extended by the Court . . ." Further, as a practical matter the attorneys' fee award will most likely be appealed by one or both parties, and the Court of Appeals should have the opportunity to review all aspects of the case at the same time, rather than being subjected to successive appeals.

Defendants' principal objection to the attorneys' fees application rests upon the limited extent of plaintiff's ultimate recovery. Initially he filed a five count complaint against Norton, Bauer, Palazzola, O'Neill and Saage in their individual and official capacities and against the Township of Teaneck. The five counts consisted of: i) violation of 42 U.S.C. §1983 based upon alleged retaliation for protected speech; ii) a state law claim for intentional and negligent infliction of emotional distress; iii) a retaliation claim under CEPA, iv) a defamation claim; and v) a claim of violation of state law prohibiting retaliation against plaintiff for his initiation of his

8

federal lawsuit. At the end of the day plaintiff prevailed only on his free speech retaliation claim and against only one of the defendants - Saage in his individual capacity. The total judgment that he recovered amounted to only $197,859.00 in compensatory damages and nothing for punitive damages. Defendants contend that the bulk of the requested attorneys' fees were on account of services performed to pursue defendants who prevailed and to establish claims on which plaintiff lost. They cite West Virginia Univ. Hosp. v. Casey, 898 F.2d 357, 362 (3d Cir. 1990) in which the Court stated that "when the plaintiff has not prevailed on a claim 'that is distinct in all respects from the successful claim,' time spent on the unsuccessful claim 'should be excluded in considering the amount of a reasonable fee.'"

The applicable general principles are set forth by statute and the Supreme Court's seminal case on the subject of an attorneys' fee award. Plaintiff must be a "prevailing party" to recover in full his attorney's fee under 42 U.S.C. §1988, which provides in part:

> In any action or proceeding to enforce a provision of section . . . 1983 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . .

42 U.S.C. § 1988.

In Hensley v. Eckerhart, 461 U.S. 424 (1983), the Supreme Court adopted a straightforward "bottom line" approach to attorney fees litigation, stating:

> Normally [a full attorney's fee] will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters. Id.

9

To qualify as a "prevailing party," a litigant must demonstrate that he obtained relief on a significant claim in the litigation, and that such relief effected a material alteration in his legal relationship with the defendant that was not merely *de minimis* in nature. See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-93 (1989); Holmes v. Millcreek Tp. School Dist., 205 F.3d 583 (3d Cir. 2000). Generally, plaintiffs are considered "prevailing parties" for attorney's fees purposes if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433 (quoting Nadeau v. Helgemoe, 581 F. 2d 275, 278-279 (1st Cir. 1978)). Here, all the claims arose from a common core of facts and were based on closely related legal theories. See Failla v. City of Passaic, 146 F.3d 149, 160 (3d Cir. 1998).

There were three trial court phases in the present case: i) the period in which defense attorneys prepared and filed the action, engaged in extensive discovery and proceedings before the magistrate judge, and prepared for, briefed and argued the summary judgment motion; ii) the period when plaintiff represented himself at the trial and in connection with post-trial motions; and iii) the period after remand from the Court of Appeals during which defense attorneys addressed the remittitur motion and engaged in resolution of the CEPA claim.

The legal work that took place during phase one cannot be neatly allocated among the claims and among the defendants. Much of it would have been performed even if there had only been a claim for retaliation against Saage. It was not until the Court decided the summary judgment motion that the state law claims were dismissed. All of the defendants remained in the case even after the summary judgment motion was decided. Up to that point, at least, the claims arose from a common core of facts and were based on closely related legal theories. "The court's

10

rejection of or failure to research certain grounds is not a sufficient reason for reducing a fee." Hensley, 461 U.S. at 435. The defense attorneys are entitled to reasonable fees for all their work performed during phase one.

The attorneys are not seeking fees for services performed during phase two, because they performed no services during that period.

Phase three involved legal work in pursuit of the CEPA claim, legal work in connection with the remittitur motion and legal work performed in connection with the attorneys' fee application.

By the time the case returned to this court on remand all of the claims except the CEPA claim had been decided adversely to plaintiff except the retaliation claim against Saage. The CEPA claim stood alone. To support this claim plaintiff relied upon the record developed prior to trial, for which defense attorneys are being compensated, and upon the record created at trial, for which the attorneys are not entitled to compensation. At that time the CEPA claim was distinct in all respects from plaintiff's successful claim. Plaintiff was unsuccessful on the CEPA claim; he was not a prevailing party; and therefore as to it, his attorneys are not entitled to attorneys' fees. Rode v. Dellarciprite, 892 F.2d 1177, 1183 (3d Cir. 1990); West Virginia Univ. Hosp. v. Casey, 898 F.2d at 362[1].

On the other hand attorneys' services performed in connection with the remittitur motion

---

[1] In their reply brief plaintiff's counsel listed the lawyers who worked on the CEPA motions and they set forth the hours expended on those services by each lawyer and the rate charged for each lawyer. Plaintiff's counsel listed Brian Brown who expended 20 hours on those motions at an hourly rate of $50 for a fee request of $1,000. There does not appear to be a claim in the attorneys' fee application on account of these services, and therefore this amount will not be deducted from the request.

11

and fee application were related to the claim on which plaintiff was successful and should be compensated.

Defendants challenge the number of hours plaintiff's attorneys spent in connection with various tasks as unreasonable. Initially they attack the total of 235 hours spent in preparation for the pretrial motion for summary judgment, arguing that the defense attorneys, who profess expertise in civil rights law, should not have required that amount of time to address the motion for summary judgment. What this argument overlooks is that preparation for the motion required not only legal research but also organizing a huge record and analyzing that record in regard to each defendant on each claim. The court's own need to address that record and view it in conjunction with the several claims against six defendants convinces it that the time plaintiff's attorneys spent on the summary judgment motion was not excessive.

Defendants object to the 185.85 hours spent preparing the pretrial order, and in particular the 80 hours which senior attorney Mr. Herbst devoted to that task, charging $490 per hour. This work, defendants argue, should have been performed by a junior associate. In a case as complex as this one it was not unreasonable for the partner who is expected to try the case to devote a major amount of time to the document that will control the course of the trial. Reviewing deposition transcripts and deciding what portions should be introduced at trial by itself required exercise of critical judgment and consumed considerable time.

Defendants object to reimbursement for relatively small numbers of hours expended on several tasks, none of which assumed major importance in the scheme of things, but in the aggregate do add up: i) 11.75 hours ($5,112.50 in fees) and $5,875.00 in costs in connection with retaining, interviewing and attending the deposition of plaintiff's psychiatrist Dr. Kuhn, ii) travel

12

time of New York counsel Mr. Herbst 20.5 hours ($10,045 in fees) in light of the fact that local counsel who billed 12.5 hours ($3,867.50) for travel time could have handled the case alone; iii) 10.90 hours ($3,040.50 in fees) for work performed by a lawyer which might properly have been performed by a paralegal or secretary, e.g., Weddle's digesting deposition transcripts; iv) 9 hours ($3,442.50 in fees) for having more than one counsel attend oral argument, e.g., three attorneys (two from the same firm) charging nine hours in travel and court time for attending oral argument on October 26, 1998.

With respect to these objections the court finds: i) Plaintiff's psychiatric and emotional state was an important factor in this case, and consequently it was not unreasonable to retain his psychiatrist Dr. Kuhn, interview him and review his report even through he may have ultimately been precluded from testifying; ii) in view of the complex factual and legal issues there was no reason why plaintiff should not have had the services of both New York and local counsel, who allocated assignments between them and did not appear to duplicate each other's work; consequently their travel expenses will be allowed; iii) it was appropriate to have a junior associate, Weddle, digest deposition transcripts; certain tasks should not have been performed by attorneys and the hours claimed for them will be disallowed. Flor's delivery of brief to plaintiff (.8 hours - $216), Weddle's faxing long document (1 hour - $275), Herbst's work on unrelated matter (.2 hr. - $98), Hague's work on unrelated matter (1.5 hrs. - $412.50); iv) it was reasonable for both local and New York counsel to attend the October 26, 1998 summary judgment motion oral argument. It was a highly critical motion on which both Mr. Herbst and Mr. Greenwald worked extensively. It was reasonable to have all counsel who played an important role in connection with the motion present at that hearing.

13

Defendants do not object to the rates on the basis of which the Deutsch Resnick attorneys seeks compensation. They do object to Mr. Herbst's and Mr. Greenwald's proposed hourly rate of $490 and they object to the rate applied to the hours of certain of the other H&G and BLH attorneys.

The general rule is that the hourly rate requested by a prevailing party's attorneys should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 (1984); Student Public Interest Group v. AT&T Bell Labs, 842 F.2d 1436, 1448 (3d Cir. 1989). The District of New Jersey, Newark vicinage, where the case has been brought, is the relevant community to which the court should look. Coleman v. Kaye, 87 F.3d 1491, 1510 (3d Cir. 1996).

In this Circuit the current rather than the historic hourly rates should be used in awarding attorneys' fees, as this compensates the attorneys for delay in payment. Lanni v. State of New Jersey, 259 F.3d 146, 149, 150 (3d Cir. 2001. There has been and will continue to be unusual delay in this case. An attorney's customary billing rate is strongly indicative of a reasonable hourly rate. See, e.g., Gusman v. Unisys Corp., 986 F.2d 1146, 1150-51 (7th Cir. 1993). The court notes, however, that Mr. Herbst, like Mr. Greenwald is a New York City attorney and that typically attorney fee rates there are somewhat higher than they are in northern New Jersey. Plaintiff's counsel have submitted the affirmation of Robert S. Raymar, Esq., an experienced New Jersey attorney practicing in Newark, in which he states that "the customary rates of partners within this community generally range from $300-$550 per hour," and "for a person of Mr. Herbst's credentials, expertise, and experience, and based on my knowledge of rates charged

14

in this marketplace, I believe an hourly rate of $490 is reasonable and appropriate."

Mr. Deutsch, a New Jersey attorney who is experienced in the employment law field and who has been practicing in that field since 1989, stated in his certification that, "I set the billing rates at this firm based on the experience of the attorney and the prevailing market rates for employment law experts in Northern New Jersey." He set his own current hourly rate as of January 6, 2005 at $365. A review of the resumes of Mr. Deutsch and Mr. Herbst suggests that Mr. Herbst has a more varied litigation experience than Mr. Deutsch, having served as an Assistant United States Attorney and Deputy Chief of the Special Prosecutions Division in the Eastern District of Pennsylvania. For two years he was the litigating partner of an eight-lawyer firm conducting or supervising all manner of commercial and criminal litigation, including litigation in the federal courts of New York and New Jersey. For a period he was Executive Assistant District Attorney in Kings County, New York. Since August 1983, when he returned to private practice in Manhattan, he continuously engaged in civil and criminal litigation in federal and state courts. A substantial part of his practice since 1983 has been devoted to civil and constitutional rights cases involving official and municipal misconduct.

Mr. Herbst's abilities and experience have been evident in the skill in which he has conducted this case. The rate at which he seeks to be compensated is reasonable in the Northern New Jersey market.

Mr. Greenwald's resume does not disclose as wide a range of litigation experience as that of Mr. Herbst. It suggests that prior to the formation of the H&G partnership in 1995 much of his practice was devoted to business law. Although Mr. Herbst states that were Mr. Greenwald now a partner at BL&H his rate would be $490 per hour, it is difficult to justify this in the record.

15

The appropriate current rate to be applied to his services is $400.

Defendants object to the $260 rate requested for Elissa Lubin and Toni Marie Angeli. There are no resumes or certifications for either of these persons. They apparently graduated from law school in May 2001 and were thereafter admitted to the bar. Each engaged in legal work prior to becoming an associate at H&G. In an April 2001 application for attorneys' fees plaintiff's attorneys requested compensation for these two attorneys at the rate of $150 per hour for a total of 58.5 hours. Apparently at the time the work was performed they had not yet been admitted to the bar. In the present fee application compensation is sought for the same work at the rate of $260 per hour on the hypothesis that this would be H&G's current billing rate for these two lawyers were they still working for H&G. This is unduly speculative, and a more appropriate rate is $150 per hour. This finds support in Deutsch Resnick's rate of $135 per hour for Kathleen M. Ryder who was admitted to the bar in December 2004 and its rate of $165 per hour for Jeanette Tejada who was admitted to the bar in January 2003.

Defendants object to the hourly rate of $275 attributed to Christopher Weddle who worked on the case from April 1997 to September 1997. He had graduated from law school in 1996 and was admitted to the bar in 1997. Comparing his rate with those of Ms. Ryder and Ms. Tejada, who were more recently admitted to the bar, it is probable that his hourly rate would be $275 at current market rates. The error in defendants' contentions is that they seek to compute the rates at historic rather than current market rates.

On similar grounds defendants object to the hourly rates requested for Amanda Masters ($275), Carol Hague ($275) and Spencer Freedman ($260). The objections will be rejected for the same reason that the objections to Weddle's rate is rejected.

As a result of these rulings the requested hourly rates will be reduced as follows:

| Attorney | Hours | Original Rate | Revised Rate | Reduction |
|---|---|---|---|---|
| **Merits Litigation** | | | | |
| Greenwald | 134.00 | $490.00 | $400.00 | $12,060.00 |
| **Attorneys' Fee Application** | | | | |
| Lubin | 38.50 | $260.00 | $150.00 | $4,235.00 |
| Angeli | 20.0 | $260.00 | $150.00 | $2,200.00 |

The attorneys whose rates have been reduced did not perform work in connection with the CEPA claim, and consequently there has not occurred a double deduction for the same services, i.e., on account of the reduced rates and on account of CEPA work.

## Computation of Award

With respect to the H&G and BLH firms the following reductions are required:

<u>Mr. Greenwald</u>

    134 hrs-rate reduced by $90    $12,060

<u>Mr. Herbst</u>
    CEPA work 76.1 hrs @ $490    $37,289
    Unrelated work .2 hrs @ $490        98
                                      $37,387

<u>Mr. Freedman</u>
    CEPA work 8.6 hrs @ $260    $2,236

<u>Mr. Weddle</u>
    Faxing 1 hr @ $275    $ 275

<u>Ms. Hague</u>
    Unrelated work 1.5 hrs @ $275    $412.50

<u>Ms. Lubin</u>
    38.5 hrs - rate reduced by $110    $4,235.00

<u>Ms. Angelis</u>

  20 Hrs - rate reduced by $110    $2,200.00

The foregoing requires a total reduction of the fees requested by the H&G and BLH firms of $58,805.50 resulting in an award of $430,019.50.

With respect to the Deutsch Resnick firm the following reductions are required:

<u>Mr. Deutsch</u>

  CEPA work 15.9 hrs @ $365  $5,803.50

<u>Mr. Nirenberg</u>

  Appeal work 17 hrs @ $245  $ 4,165.00
  CEPA work 162.9 hrs @ 245  <u>$39,910.50</u>
             $44,075.50

<u>Mr. Cash</u>

  Appeal work 7 hrs @ $195  $1,365.00
  CEPA work 5.2 hrs @ 195  <u>$1,014.00</u>
            $2,379.00

<u>Mr. Ryder</u>

  CEPA work 1.5 hrs @ 135  $202.50

<u>Mr. Flor</u>

  Brief delivery .8 hrs @ 275  $216.00

The foregoing requires a total reduction in the fee requested by the Deutsch Resnick firm of $52,676.50 resulting in an award of $91,146.

The requests for reimbursement of disbursements of the H&G and BLH and Deutsch Resnick firms appear reasonable and will be allowed.

## Conclusion

Plaintiff's counsel, H&G and BLH, will be awarded attorneys' fees in the amount of $430,019.50 and their disbursements in the amount of $24,594.04 for a total of $454,613.54. Plaintiff's counsel, Deutsch & Resnick, will be awarded attorneys' fees in the amount of $91,146.00 and their disbursements in the amount of $3,471.28 for a total of $94,617.28. The court will file an order implementing this opinion.

Dated: March 17, 2005

DICKINSON R. DEBEVOISE
U.S.S.D.J.